Brooke, J.
I think it well settled, that where two persons claim, each in his separate right, the same sum of money from a third party, and the third party pays it to one of the claimants, the other cannot recover it from him who receives it, in this or in any other form of action ; for there is no privity between them. Whether he can recover from the third party, who has rejected' his claim and paid the money to his successful competitor, is another question, which does not belong to this case.
On the merits, whether the widow of Burton was entitled to the money in question or not, there is no ground for the claim of his executor to it. The act of congress of the 15th May 1828 repudiates his pretensions. The act was passed in pursuance of a memorial of the surviving officers of the revolution assembled at Baltimore. That memorial protested, in strong terms, against any compensation from congress in the nature oí pension: it admitted, that congress was under no legal obligation to make them compensation for the depreciation of their pay and of their commutation certificates; but it represented, that the nation was under a moral obligation to *599 make them compensation. The provisions of the act of congress are responsive to the claim. As the government was under no legal obligation by the existing law to make any such compensation, congress had power to give it on such terms as it thought proper; and as it was difficult to ascertain the loss of each officer in the sale of his certificates, congress thought proper to allow to each full pay for life, but none to receive more than a captain’s pay. It thought proper also to make the compensation personal to the officer; the 4th section of the act declaring, that it should not be transferrible, or liable to attachment, levy or seizure, by any legal process whatever, but should enure wholly to the personal benefit of the officer or soldier entitled to the same; thus excluding his executors or administrators. The act distinguishes it from a pension, by calling it pay. Pensions are not granted in consequence of a deficiency of gay while in service: they are gratuities for honourable service, when the party, in most cases, is unable to render further service. Dr. Johnson’s illnatured definition of a pension in his dictionary—that in England it is generally understood to mean pay given to a state hireling for treason to his country—can never be applied to the pay given by this act of congress to the surviving officers and soldiers of the revolution, or to the pensions bestowed as gratuities on pensioners by any act of congress.
Whether Burton’s widow was entitled to the arrears of pay allowed to her husband, it is not necessary in this case to decide. The judgment should be affirmed.
Tucker, P.
If the merits of this case were with the plaintiff, I should still be of opinion that the action could not be maintained. If the executor of the pensioner, and not his widow, was entitled to his unpaid pension, then the payment to the widow by the government was a payment in its own wrong, and the execu *600 tor may still justly demand payment to himself from ProPer department. He cannot demand of the widow to pay over to him what she has received ; for that "was not his money. His money is in the hands of the governraenl:* What she received, she received as her own, claiming title to it as her own ; and her claim being admitted and paid, she can never be compelled to refund. Mayor &c. v. Judah, 5 Leigh 305. And if the government cannot compel her to refund by direct action, it seems to follow, that she cannot be, indirectly, compelled to refund, by being forced to pay over the amount to another claimant with pretensions adverse to her own. There is no privity between them, nor is there any ground on which to rest an implied contract. The reasoning of the court in Rogers v. Kelly, 2 Camp. 123. seems to me to be in point. The government and the widow cannot both be the debtors of the executor. Now, if the payment was improperly made, the government is not discharged, and is still debtor to him. The widow, therefore, cannot be his debtor.
But upon the merits, I think (contrary to my first impressions) that the payment to the widow was right. The act of congress was made under no legal obligation to make the provision it contained : congress had power to do it upon its own terms, and of course to provide, that this retribution for meritorious services should enure to the personal benefit of the officer, and pass according to its discretion. In the exercise of its discretion, it reduced general officers to the compensation of a captain, and limited the commencement of the allowance to March 1826. By whatever name we may designate the allowance directed to be paid, it must still go according to the will of the legislative body; which expressly exempted the gift from attachment, levy, seizure or assignment; and declared, that “it should enure wholly to the personal benefit of the officer.” It made" no mention of his executors or administrators; *601 and but for tbe subsequent act of March 2.1829, which gave all arrears of pensions to the widow of the deceased officer, it may well be doubted whether they would have been payable to any one after his death. The executor would seem to have no pretension to claim them ; since, in his hands, the pension would be applicable to the payment of debts, which would defeat the declared purpose of the act of May 1828. Therefore, the subsequent act of March 1829, which gives all arrears to the widows, was no invasion of any prior vested right; for until this last act was passed, there was no provision of law declaring what should become of the arrears of the pensions.
Upon both grounds, I think the judgment should be affirmed.
Stanard, J. concurred with the president.
Judgment affirmed.